Good morning, ladies and gentlemen. Our first case for argument this morning is Libertarian Party of Illinois against Scholz. Mr. Huzak. May it please the court, counsel. I'm Assistant Attorney General Richard Huzak, counsel for the members of the Illinois State Board of Elections, and I urge the court to reverse the district court's entry of summary judgment for the plaintiffs in this case, in which they claimed that the full slate requirement of the Illinois Election Code violates their First Amendment and Fourteenth Amendment rights to political association and expression, both as a standing issue, which we've mentioned in our briefs. That is the first issue in jurisdiction, is the first issue in every case, so I would very much like you to address it. Our position is this, Your Honor, is that for the Kane County offices and the Kane County defendant, whom we do not represent, but we brought it to the court's attention because it is jurisdictional, there is no evidence that in light of the plaintiff's failure to come anywhere close to the minimum signature requirement, which they do not challenge, that they will ever be able to get on the ballot, notwithstanding the full slate requirement, or that they will even incur any additional costs if they were to try to do that in the future. There's no evidence about any costs that they would incur in connection with that, and given the fact that they got less than 10 percent the one time they tried, the prospect that they would try again and incur such costs doesn't seem evident. So on that basis, we would say that the case's finding standing, in other circumstances, the Nader case where Nader had tried several times to run, and the court relied upon that to show a likelihood of recurrence for his standing to obtain injunctive relief, the Krizlov case versus Redenauer, those are distinguishable. Other than those comments, we rest on our brief. We don't think it eliminates jurisdiction over the entire case by any means. The court has satisfied the full slate requirement many times and gotten on the ballot for statewide elections, and the State Board of Elections is a defendant here, so we have live controversy, at least as to those issues in those defendants. And then, unless the court has questions directed to the facial challenge to the statute, which we've addressed in our brief, we think satisfactorily, I'd like to turn to the main issue in this case, which is whether the plaintiffs have shown on this record that the full slate requirement is unconstitutional as applied to them. And that would, they could accomplish that and sustain the district court's judgment in either of two ways. Either if they showed that the full slate requirement imposes a severe burden on them, in terms of their interests here, or alternatively, that if it does not do that and require strict scrutiny, that it nonetheless imposes a burden on their protected interests that outweighs the state's legitimate interests in avoiding putting on the ballot the party names of non-parties, frivolous parties, or one-dimensional parties that do not have a broad, deep, and enduring support among the electorate. I'm not sure I see a distinction between the facial and as-applied challenge here. The full slate requirement applies to all minor party candidates and all minor parties in the same way. The Libertarian Party isn't claiming that it applies to it uniquely in some sort of way, or that it applies uniquely difficult burdens to local candidates as opposed to state candidates. I don't understand the challenge to be really an as-applied challenge. I understand it to be really a challenge. Well given that, given that, this is an issue that I've sort of grappled with too, because the easy labels and distinctions between facial and applied make a lot of sense in some circumstances, in others they seem a little murky, and in this case though the Washington State Grange Party case indicates that facial challenges, even for ballot access challenges, shouldn't be sustained by hypothetical or imagined circumstances in which there would be the type of burden that outweighs the state's interest. So here one of the examples... We're not talking about hypothetical burdens. I mean there's a burden here. The full slate requirement burdens ballot access for minor parties in a way that it doesn't burden ballot access for people seeking to run as independents. So there's clearly a burden. The question is what is its severity and what are the justifications for it? I'm glad to address those. Again, you know, we would submit that the facial standards are pretty strict. They haven't been met here, but certainly, you know, we can address some of these issues in the context of an overall challenge under the Anderson Burdick test. I would like to sort of reemphasize our point though, which is that the specific burden that they identify is not an inability to get their candidates on the ballot as such, but their inability to have their candidates' names on the ballot with the party affiliation next to it. And there are several cases that have focused on that specific burden and said that it is not severe. Sometimes in other contexts... No, those cases are limited to their context, which was blanket primaries and ballot access. The overall analysis must be informed by the complete context of those cases. When you start to look at the state's interests, the extent to which they're advanced by the particular requirement, but on the isolated issue of whether the burden, what the burden is and whether it's severe, I think those cases are informative. In fact, the case that the opposing counsel submitted to the court with a supplemental authority yesterday at length distinguishes the exactly the reasoning that we have submitted here, which is that the only burden they're talking about, this is similar to the Dart and Schrader cases, which involves somewhat different restrictions, but again it's minor party versus established party or independent analysis, that the burden is not in inability to form a party, to associate for political purposes, to choose candidates, to promote candidates, or even to get candidates on the ballot. It's only the inability to have those candidates on the ballot, have the party's name next to them, and we agree that's not an insignificant burden. There's a lot of... No, this is not a case about using the ballot as a form for political speech. This is a case about accessing the ballot for your candidates. Well, it's clearly, you know, a political association burden here. The Libertarian Party and other minor parties in Illinois cannot access the ballot without fielding a full slate of candidates, so that's a burden on their right to access the ballot, to associate for political purposes, and run candidates that are affiliated with it, and that are identified as such. It's not like Timmons, which was all about, you know, accessing the ballot to in terms of, you know, just the billboard effects of using the ballot to identify yourself, as opposed to actually run candidates. I would have two answers. One is that the historical evidence shows that they have complied with the full slate requirement, and in 11 out of the last 14 general elections in Illinois, for statewide office, have been on the ballot. They're getting their ballot. To the extent they want to claim that there's a severe burden on their ability to get on the ballot, it's disproved or refuted by actual historical evidence, and they produce no evidence that the full slate requirement prevented them from getting on the ballot in the individual cases. We could hypothesize that it's more difficult, but in the absence of evidence to that effect, it's impossible for the court to conclude that that burden is severe, or that that burden is significant enough that in the balancing analysis, it would be modified. Is it severe as, or at least significant as applied at the local level, because there are so many obscure local partisan races? Well, there are a lot of municipalities in Illinois where small parties do get on the ballot. Addison is an example. Glen Ellyn is another example. There are lots of little parties that have historic representation. They satisfy the full slate requirement in municipal elections. They're on the ballot, and there's no showing in this case, there's no evidence in this case that the full slate requirement has impeded minor parties from getting on the ballot in any local elections at a less than statewide level. Ultimately, the plaintiffs have some burden of proof to show that the burden on them, unless it's obviously severe and the court can take, you know, a common-sense approach based upon prior case law or just, you know, obligation as plaintiffs to establish the severity of the burden or the degree of the burden. And here, the court cannot fill that evidentiary vacuum in this case with assumptions that somehow the political system has to favor small parties to enable them to get over the hurdle to get their candidates on the ballot. And I did want to add my second response to the court's question, which is, this case does not prevent, there's no evidence that the court has prevented libertarian candidates from getting on the ballot. Its only effect is in a case where, for example, the plaintiff Julia Fox, if she had met the signature requirement as an independent candidate, the only thing it would have prevented her from is having the party name on the ballot. So that is the burden. It's not as if it is preventing her from getting on the ballot. Their response to that is, well, being an independent isn't the same as being a party person. And I think in our briefs we've explained that if you flip the equation and look at it the other way, where an independent is forced to run as a party, that would be substantially more difficult. But the the burden on a party person who has to run as an independent is much less significant. And I think that should go into the analysis here. It's also worthwhile, I see that I'm into my rebuttal time, I've reserved four minutes. Well, before you sit down, what is the state's rationale for requiring a new party to field the full slate while an established party doesn't have to? Okay, that distinction is one that I think it relates to several of the interests that concern the government's interest in sort of promoting party and that is that the public normally identifies a party with some organization historically that has, as the Jennis case said, historically broad established support. And established parties meet that in another way. They're consistently demonstrating that level of support by their success at the polls. Minor parties don't even have to go through the primary process, so they have that advantage. I'm not sure I understand that. All an established party has to do to remain on the ballot as an established party is get five percent of the vote for some office, right? So if they put forward a candidate for one office and get five percent, they're on the ballot next time. But new parties can't do that. They can't put forward five percent of the vote by signature and Suppose the name of the established party is the Prohibition Party, right? We've had that in Illinois, right? Their sole platform is let's reinstate prohibition, right? And they put up somebody for governor, that person gets five percent of the vote, and year after year they run an office, run for governor and get five percent of the vote. That's perfectly fine under Illinois law. Why is a new party forbidden to do the same thing? Part of the difficulty is that drafting a criterion that separates what are established parties or substantial parties in the traditional sense and those that are the one-off, fly-by-night, flash-in-the-pan, single candidate parties or sham parties is difficult. The full slate requirement may not perfectly track that differentiation because it's hard to craft a rule that does, but it does correspond roughly with the notion that, as a general matter, you do have broader support if you're able to muster a full slate of candidates. And most parties historically have aspired to do that, although not in every election. And so we can hypothesize circumstances where, for example, the district court said you have one office, the coroner's ideologically opposed to for some reason. That's an as-applied challenge that would be valid for that case, but to say that we can imagine a bunch of different circumstances in which this criterion adopted by the state doesn't fit quite as tightly as strict scrutiny would require doesn't condemn the metric or the criterion at all. And so the fact that the substantial parties, the candidates, can satisfy those and correspond more to the traditional sense that this rule is intended to advance, and that new parties do not have to but have much easier requirements, including ones that can be manipulated by confusing or even deceptive petition signing requirements, doesn't condemn the rule as a whole. It's hard to come up with a rule that perfectly aligns with the common-sense notion that's difficult to define and build criteria around that the state is advancing, but it's a legitimate one and one that is not undermined by minor discrepancies in particular examples that can be hypothesized. Thank you, counsel. Thank you. Mr. Schoen. May it please the Court. Let me address the standing issue that was raised first, and I suppose I'll bring to the Court's attention the decision of Lee versus Keith, which Judge Sykes happened to have written, which deals with a standing question. In that case, by the way, that's the case which should have led the state of Illinois to change this full slate requirement. There's reason to believe the full slate requirement came in as a fix for this independent, sorry, we've got bronchitis, independent strong high threshold that there was. But in any event, in that case, in Lee versus Keith, the parties, they had a high signature requirement, 10%. They had a very early deadline. They were abandoned the race because they knew they couldn't get the signatures. Still, the Court found they had standing, citing Nader versus Keith and others, and the Court's language was there would be no question of a candidate standing to seek an injunction, placing his name on the ballot in advance of the submission or even collection of any petition. So in other words, you don't even have to start getting the petitions to have standing to bring a challenge. Your problem is that the party didn't take that approach. It went out, collected signatures, and demonstrated quite convincingly that he couldn't get 5%. Why doesn't that matter? It doesn't matter at all. It's the same as if he didn't even make the attempt. It simply illustrates the burden. Counsel, the Supreme Court has said that a risk can create standing. So a statute that poses a risk to ballot access might be litigable. But after a party demonstrates that it can't get 5%, it's hard to describe the full slate requirement as some additional risk, because we already know the Libertarian Party won't be on the ballot in Kane County. We would look at the flip side, Your Honor, and that is that perhaps the 5% was too high. But that's not being challenged here. Therefore, it's not directly relevant. Indeed. In any event, another important issue that this Court addressed and Judge Sykes wrote to in Lee v. Keith, which is the sort of second important issue. They're all important issues. One of the other important issues that the Court addressed today, and that is this argument that, well, there's no harm here, really, because the candidate's not being denied access to the ballot, simply being denied access to the ballot qua Libertarian Party candidate. And this Court, first of all, the following. Political party and the independent candidate approaches to political activity are entirely different, and neither is a satisfactory substitute for the other. That cites the Storer and many, many other cases. In fact, the leading Supreme Court cases from this circuit are to the same effect, and that is Norman v. Reed and Socialist Workers' Party case. These cases emphasize the importance in our system to allowing small parties to develop and grow as small parties, associational rights, etc. Look, there is no way possible. The other thing that Lee gives us, by the way, just to throw another Lee factor in here, is it also emphasizes the importance of the interests being tied to, the purported interests being tied to the restriction at issue. That's the problem here. It's not just that these interests weren't proved at all. They weren't. It's that they bear no relationship whatsoever to the full slate requirement. And that, of course, is what three district judges found in this case. Two by way of motion to dismiss, Judges Thorpe and Gottschall, and one in this summary judgment case. They called the state interest and connection flimsy, bereft of logic, and that makes sense, because exactly what Justerbrook said earlier, a number of things. In this case, the purported interests are modicum of support. Well, first of all, this bears no relationship to a modicum of support. They have the 5% threshold, and that's the same as for the other established parties or independents. Some showing, by way of signature requirement, of a modicum of support. The fact that a party doesn't have, in this case, a candidate who wants to run for auditor and then doesn't have a lawyer in its rank who wants to run for state attorney, a doctor who wants to run for coroner, a school superintendent who wants to run for school superintendent, that doesn't relate at all to whether the party has a modicum of support. It may relate to the kind of people in the party, but that's not something that we regulate. The example given of the Prohibition Party is similar to an example I gave in my brief of Education Party, or pick the issue. A party that wants to grow and develop based on issues that are important to them, and possibly, as Judge Tharp wrote, not field candidates for offices that they're inalterably opposed to for some reason, and that's their right. But any of the other interests we can apply the same formula to. That is, this has nothing whatsoever to do with voter confusion or party splintering. What they did was exactly what courts in Fifth Circuit, Eleventh Circuit, Pilcher, Filani, have said, we can't do. We don't allow the state to pick interests out of thin air that apply in other cases. Interests like the ones named here, and then somehow they don't have to put on any evidence to show either that those interests exist or that there's some connection to this case, and they get by with that because they stated a state interest. That's really what they argue in their brief, and that has no place in this process. Is this uniquely burdensome at the local level as opposed to statewide races? Well, it's more burdensome at the local level because of the variety of kinds of offices that are available, that are on the slate at that time, and this case presents the perfect example. Doctor, lawyer, school superintendent, and so on. But it's curious that if this really related to modicum of support or any of these other interests, then why aren't they applied to the other races that I identify in here? In other words, if one wants to run for a US House seat, all one has to do is get that signature requirement, Libertarian Party. There's no other office available on that slate, and it really undermines the idea that this is an interest that's a valid, legitimate interest. I would say this to you. This is how far I believe the argument goes. It's not just that this is unduly burdensome in addition to the 5%. I'm going to say to you, and I don't have to prove this point, but I'm going to say to you that if there were no signature requirement in this case, this regulation would be invalid. It simply bears no relationship, and case after case talks about the connectivity that there has to be between the regulation and the interest stated. By the way, I mean, look, I cite cases in a brief, probably ad nauseam, on this issue of why the independent alternative doesn't satisfy. There's some great quotes in some of those cases, you know, Bullock versus Carter. We can hardly accept as reasonable an alternative that requires candidates and voters to abandon their party affiliations in order to avoid the burden, in that case, of paying a filing fee. They're just to grow. Another issue, you know, in Lee versus Keith, it's very important, and it applies here. The court did an analysis there that Storer and other cases have told us appropriately should be done, and that is a comparison to other states. It's relevant at a minimum to show least restrictive means or narrowly tailored, if you want to find there's an important issue here, and that is 49 other states don't have anything that looks anything like the full slate requirement. It's the requirement, not just the burden of it, and that's relevant. The court found the extraordinarily high deadlines, signature requirement, and early deadline in Lee versus Keith, in comparison to 49 other states, to be impermissible. One factor in that, and that's certainly a factor to consider. But the Libertarian Party has regularly been able to field a full slate for statewide offices? Not regularly, Your Honor. The Libertarian Party in the early 90s through 96 qualified, got more signatures than would be required here, to get on for a statewide party. In fact, this is one of the disputes in the paper when they said they never qualified for the entire state or Kane County. I felt that was misleading, because what they didn't say is Libertarian Party qualified as a statewide party. And so I have a letter here that, since that argument went to order the record, I brought a letter in from their Board of Elections congratulating the Libertarian Party in the 90s for being established party on a statewide basis. That's part of the irony here, that they could qualify as a statewide basis, but because of this full slate requirement, they can't. They can't at the countywide level. At the countywide level. And that, look, I don't understand, Counsel, I don't understand the can't part. Why can't the the phone directory and make no effort at all to have any of them elected except the one the Libertarian Party really wants to contest? If they did, you, Your Honor, would, I hope, and should, as other cases have written, suggest that that's a preposterous formula, because it encourages sham candidates. And we, case after case... One might say that that's a problem with the state law. It does, it said the Libertarian Party can't qualify for the ballot in Kane County. And I said, what do you mean they can't qualify? They can put up sham candidates. They can put up sham candidates. Right. It might be stupid, but I don't see an argument that the Libertarian Party just can't do it. It might, I don't know if it would be stupid or not. It's something that our, all of the cases in ballot access area that have addressed that issue, would not permit. In fact, in Lee, they talk about the idea of someone creating, to get around this independent hurdle, create a sham party. How about that? They said we don't encourage that kind of thing. We're not going to have a law that encourages that sort of thing. You know, Judge, I'll just draw your opinion to it, your attention to another opinion, which Judge Sykes wrote, not wrote, but was on the panel in Navarro versus Neal, Judge Tinder wrote the opinion. And that case, excuse me, at least stands for the proposition that there has to be a connection between the objective and the restriction. It's not just a matter of putting up empirical evidence and that sort of thing. Although these cases from the other circuits and from this circuit clearly say that's what we mean under Anderson verdict. When we say first step is what's the burden? Second step is evaluate the legitimacy and the strength of their interest. That certainly means the relatedness of those issues, the connectivity of those interests, rather, to the restriction at bar. Judge, if the way this system is set up, if a Libertarian Party candidate wanted to what would be required would be, this is just the additional burden, what would be required to be send petitioners out into the street to get a petition signed for the US House, a petition signed for State Senate, a state rep position, a petition for countywide offices, and a petition for district and county for district offices. That's an anomaly. That's different from at least 39 other states. But that's just an additional burden here that one has to do if you want to be a minor party that gets on all across the state. Our focus here is what happened in this case and this full slate requirement. The reason the full slate requirement is unconstitutional facially and as applied is because there is no set of circumstances under which this is an appropriate or permissible constitutionally restriction on ballot access. It violates the First Amendment, it violates the Fourteenth Amendment equal protection claim, and with all due respect there's another misstatement in their brief. The state asserts that in the lower court I took the position that equal protection analysis and the First Amendment analysis were really the same. I would amend the court's intention to document 83 at page 4 which I said the exact opposite. In fact what happened was I submitted recent authority to the court an equal protection case, Hargett from the Sixth Circuit, to say that equal protection analysis is alive and well in the ballot access area. They first had tried to say we hadn't raised equal protection, they then had to apologize and say they were mistaken about that, and so I submitted Hargett, thought it was a relatively simple matter, they wanted to brief it. They briefed it and turned Hargett on his head suggesting there's no equal protection analysis, just First Amendment. Case says the opposite. It focuses on equal protection and what I wrote was these two claims referring to First Amendment and equal protection arise from completely different constitutional perspectives. The Hargett court gave primacy, the analytical framework of verdict said it should apply to both constitutional claims, but we have to consider the two claims separately because one focuses on this disparity, that is, you know, on the face of it they want to say well established parties aren't similarly situated. No, Your Honor, Judge Sykes, you said what the, Your Honor said exactly the point. When it comes to modicum of percentage, we're on equal footing for modicum of support. They then add this full slate requirement to the minor party. I'm sorry that I've overstayed my welcome. Thank you very much. Thank you, counsel. Your time has expired, but I'll give you an extra minute since I interrupted when you were trying to save some time. Our job is to try and serve the court in resolving difficult cases and we hope that we have done so, opposing counsel and I alike. I will not respond to the accusations and misrepresentations. I think they're unfounded factually. What the plaintiffs are asking the court to do is based on armchair surmise about hypothetical circumstances on which they produced no evidence to conclude that there is either a severe burden on them or that there is such a strong burden that it outweighs the interests that the state has that are advanced by the full slate requirement. The full slate requirement is not just a dead weight that does no extra work compared to the minimum signature requirement. It requires that you have real candidates here. It avoids the possibility that people signing petitions will think, oh I'm just agreeing to have somebody else put on the ballot. How does it require real candidates? Suppose the Libertarian Party lists a candidate for every office, but it then campaigns for only one of those candidates and the candidates themselves listed don't campaign for these other offices. It doesn't perfectly require that. It doesn't absolutely assure that there aren't going to be sham candidates. It doesn't, if this were subject to strict scrutiny... I wouldn't call them sham candidates. I would call them candidates needed to comply with a state requirement. The state can't call candidates who are absolutely essential to comply with state law shams, can it? The line drawing here shouldn't be made such that it's the equivalent of strict scrutiny, but if you want to characterize them as warm bodies as opposed to sham candidates, ultimately the interest that the state has is advanced by this requirement even if it doesn't do so perfectly and in some cases that interest may be circumvented by the type of circumstances that you describe. If we had an as-applied type case with real evidence that you had the prohibition party, that they were established, they were strong, they had a breadth and depth of support, but they were prevented from getting on the ballot because of the full slate requirement, that would be a different case. Here all of the cases that they cite really stand for the opposite proposition. The Kemp case, the Stein case, the Swanson case, the Dark case. Those cases are ones in which, and the Hargett case is even the best one on remand to the district court, where they said don't come up with just speculation about burdens or severe burdens. Give us the proof and we're going to remand unless there is proof to sustain the plaintiff's claim and without that proof you can't prevail on these types of constitutive challenges. Thank you very much counsel. Thank you so much your honors. The case is taken under advisement.